DEBORAH M. SMITH
Acting United States Attorney

LAWRENCE D. CARD
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska  99513-7567
(907) 271-5071
larry.card@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:06-cr -00020-RRB |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S** |
| vs. | ) | **SENTENCING** |
| | ) | **MEMORANDUM** |
| ERIK EDWARD OSTENSEN, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the United States of America, by and through counsel, and submits its memorandum for the Imposition of Sentence Hearing scheduled for June 27, 2006.

## I.  INTRODUCTION

The United States had no objections to the Pre-sentence Investigation Report (PSR).

The United States agrees with the factual statements and the conclusions set forth in the PSR.  However, the parties entered into a plea agreement wherein the government agreed to a sentence, based on all of the information that the pre-sentence  report writer is conveying to the court.  The government did not charge the defendant with a gun offense under Title 18 section 924(c) because of the government's evaluation of the quantum and quality of proof  needed in the Ninth Circuit.

The government also was aware of the defendant's young daughter being present at the time of the arrest, and that the child was in "harm's way" by even being present around all of the dangerous chemicals.   In exchange for the defendant agreeing to a sentence of 72 months of incarceration, which is close to the top to the guidelines, and well over the minimum of 5 years, and at the time with absolutely no agreement to testify for the government if his co-defendant decided to go to trial, the defendant waived his appeal rights, fully acknowledged his illegal acts, and testified at his co-defendant's trial.

The government also did not have a DEA drug lab analysis of the methamphetamine, so the parties had to basically agree on the amount of controlled substances that were involved. The case started out as a State of Alaska case, but was adopted under the federal Project Safe Neighborhood Program.    Senior U.S.

District Judge James Singleton heard the trial of the co-defendant Graham, and was able to observe the demeanor of Mr. Ostensen, which in the government's opinion was forthright and truthful.

The trial jury chose not to believe Mr. Ostensen, beyond a reasonable doubt, but given the instruction that jurors receive on co-defendant's testimony, and the absence of any other direct evidence of Graham's involvement other than his presence at the execution of the warrant, it was not surprising that the jury acquitted Mr. Graham. The court should accept the agreement of the parties as to what Mr. Ostensen's sentence should be, and give him his last and only chance to get his life together for his daughter's well being and his own. By testifying on the government's behalf, even though subpoenaed, Mr. Ostensen severed any ties that he had with the drug community, and at the age of 29, he is young enough to live a productive life if he chooses to remain drug free. The government will submit a separate pleading under the provisions of §5K1.1.

**II.   SENTENCING ISSUES**

    **A.   The Agreed to Sentence Should be Imposed**

The government urges that the Court impose the agreed to sentence, taking the guidelines as a factor to be considered by the court as a factor in the sentencing. In *United States v. Booker*, 2005 WL 50108 (U.S. Jan. 12, 2005), the Supreme

Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004).

The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." *Booker*, 2005 WL 50108, at 16. This ruling results in a system in which the sentencing court, while informed by the Guidelines, may impose any sentence within the statutory maximum penalty for the offense of conviction. The sentence would be subject to review by the Court of Appeals for "reasonableness," except in the instant case, the defendant has agreed to waive his right to appeal his sentence for reasonableness. See *Booker*, Id. at 24.

In the wake of *Booker*, this Court must make a correct calculation under the existing Sentencing Guidelines, and then consider the final guideline calculation when determining the sentence to be imposed. Justice Breyer's majority opinion directed that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Id. at 27.

The position of the United States is that since the parties have an agreement

under the provisions of Criminal Rule 11(c)(1)(C) which outlines an agreed to sentence, the court should impose the sentence after a consideration of all factors. As the justices in *Booker* recognized, the Guidelines carry out the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible and be based on the offender's actual conduct and history.  See, e.g., id. at 21 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 19 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 42 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 47 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

      The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of 15 years of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress.  The Guidelines, consisting of offense characteristics and

various grounds for departure, address all of the considerations relevant to sentencing, as articulated in 18 U.S.C. § 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ."

## II.  SENTENCING RECOMMENDATION

The government agreed to a sentenced as follows in accordance to the agreement of the parties:

(1)  **72 months in custody , as agreed by the parties**, and any further reduction as determined by the court after review of the §5K1.1 pleading;

(2)  **No fine is requested** due to the defendant's inability to pay;

(3)  **Restitution is not an issue**;

(4)  **A three (3) year period of supervised release with forfeiture of any**

**interest in the seized firearms and ammo,** and

(5)  **A special assessment in the amount of $100.00** is, of course, required.

RESPECTFULLY SUBMITTED this 16th day of June, 2006, at Anchorage, Alaska.

                          DEBORAH M. SMITH
                          Acting United States Attorney

                          s/ Lawrence D. Card
                          Assistant U.S. Attorney
                          222 West 7th Ave., #9, Rm. 253
                          Anchorage, AK 99513-7567
                          Phone: (907) 271-5071
                          Fax: (907) 271-1500
                          E-mail: larry.card@usdoj.gov
                          Alaska Bar No. 8011068

CERTIFICATE OF SERVICE
I declare under penalty of perjury that a true and correct copy of the foregoing was sent to the following counsel of record on June 16, 2006, via electronic notice to:

Scott Sterling, Esq.

S/ Lawrence D. Card